FRANK ELDREDGE v. JOHN D. SHERMAN.

[See 70 Mich. 266.]

*Chattel mortgages—Fraud—Replevin—Evidence.*

1. Where, on the cross-examination of a witness for the plaintiff, the defendant is permitted to show statements made in his own interest, in order to place the entire conversation before the jury, it is not error to instruct the jury that they cannot consider such statements as evidence of the *facts* therein stated.

2. A mortgagor may show, as a defense in a suit to recover the property by an agent of the mortgagee under the mortgage, that he was induced to execute the mortgage by the *false* rep-

resentations of the mortgagee that the property was in danger of seizure by the mortgagor's creditors.

Error to Van Buren. (Buck, J.) Argued January 22, 1890. Decided February 20, 1890.

Replevin. Defendant brings error. Affirmed. The facts are stated in the opinion, and in the former report of the case.

*E. R. Annable,* for appellant.

*Crane & Breck,* for plaintiff.

LONG, J. This cause has been once before this Court, and is reported in 70 Mich. 266. The facts, as they then appeared upon that trial in the court below, are stated in the opinion. In that trial the defendant below prevailed, and judgment was reversed. The cause has been retried in the Van Buren circuit, where plaintiff prevailed, and defendant now brings the cause here on writ of error.

It is claimed by defendant's counsel that the present record discloses a very different case than the one presented on the former record. In the former trial, it appeared that the defendant voluntarily surrendered the possession of the property to the plaintiff, who claimed to hold it, by direction of Mr. Hoppin, for the purpose of the foreclosure of two mortgages. There was nothing appearing in that case but that these mortgages were valid, and were past due; nor was there any dispute about the property being voluntarily turned over to the plaintiff, who held copies of these mortgages, for Mr. Hoppin. No contention was then made but that the defendant surreptitiously took the property away, without tendering payment of the mortgages, or of the fees and expenses of the plaintiff in the proceeding to foreclose.

It was held by this Court, under such circumstances, that plaintiff could maintain the suit in replevin in his own name, as he was then entitled to possession.

The errors relied on for a reversal all relate to the charge of the court, except one, which is directed to the ruling of the court, and its remarks to the jury, upon the cross-examination of the witness Fred Shaw.

On the trial, plaintiff proved the execution of the two chattel mortgages, and put them in evidence, without objection. One of these mortgages was made to Albert D. Hoppin by defendant for the consideration therein expressed of $500. The other mortgage was made to Francis W. Sellick, by the defendant for the consideration of $70. This mortgage, together with the note, was assigned by Sellick to Mr. A. D. Hoppin. Mr. S. D. Hoppin was called as a witness by plaintiff, and gave testimony tending to show that, as agent of A. D. Hoppin, he loaned the defendant $500, and took the Hoppin mortgage to secure that sum. On his cross-examination he was asked if, after the mortgage was signed, he did not go up stairs, and say to one Mrs. VanKirk:

"Well, I have got that mortgage, and John's property is now safe."

This was objected to by plaintiff's counsel, for the reason that the defendant could not be permitted to take advantage of his own wrong. The witness was permitted to answer the question under such objection, and stated:

"I have no recollection of any such conversation. I don't think I spoke that way. I told them I had no interest in it. It was my son's."

The plaintiff was sworn in his own behalf, and testified, substantially, that he was a constable, and was requested by A. D. Hoppin to foreclose the Hoppin and Sellick mortgages; that on December 16 or 17, 1886, pursuant to

such request, he took possession of the property described in the writ, from the possession of the defendant, with his consent; that he advertised the property for sale under the mortgages,—the expenses of keeping the property in the mean time being five dollars, and his charges from three to three and one-half dollars, for which he had not been paid; that, on December 21 or 22, the defendant took the horses from the barn without his knowledge or consent.

The testimony on the part of the plaintiff puts the case substantially as it appeared in the former record, and upon which it was held by this Court that the plaintiff should have recovered. Defendant's counsel, however, contends here that the testimony introduced on the part of the defendant materially changes the case. The defendant was called as a witness, and asked by his counsel to state the circumstances under which the mortgage was given. Plaintiff's counsel objected to this statement, on the same ground, substantially, as that alleged to the cross-examination of Mr Hoppin,—that is, that the defendant could not take advantage of his own wrong; that is, if he gave the mortgage to cover up the property, and to hinder, delay, and defraud his creditors, he could not set that up to estop the plaintiff's recovery. In the course of these objections, counsel stated that the defendant could not now be allowed "to plead the baby act." The court overruled these objections, and permitted the witness to answer the question. The defendant, as such witness, then stated that the Hoppin note and mortgage were given by him without consideration, and he was induced thereto by Samuel D. Hoppin. The defendant testified that—

"Mr. Samuel D. Hoppin seemed to have business at my place of business, I should judge, about every ten days all through the winter,—that is, for two months

previous to the time the mortgage was given; and during those visits there he would always be sure to mention about my fixing my matters. He says:

"'I hear a good deal outside that perhaps you don't know anything about.' He says: 'You know you are owing some; and, the first you know, your creditors will pounce on you. I think it is every man's duty to take care of himself and family. I would advise you to fix yourself.'

"It rather surprised me that he would talk that way, at first, because I hadn't anything that was pressing me, that I was aware of; but by his continued. visits, and talking in that way, I finally consented to make out a mortgage."

Witness then stated that he executed the Hoppin note and mortgage at the suggestion, and under the advice, of Samuel D. Hoppin, to protect himself from his creditors, and that there was no consideration therefor. Defendant further testified that he never paid $100, or any other sum, on the Hoppin mortgage, as claimed by plaintiff, and gave evidence tending to show that he gave plaintiff no permission to take the horses upon the foreclosure proceedings; that, between the time when the plaintiff took the horses, and when witness retook them, he paid the sum of $75 to one Harley Breck, clerk in the office of, and a brother of, George E. Breck, who was then acting as attorney and counsel for Mr. Hoppin in the foreclosure of these mortgages; that this was paid upon the Sellick mortgage, and was enough to satisfy and discharge the same, but that this money was tendered back to the witness thereafter, which he refused. Witness was then asked, on cross-examination:

"Q. Did you have a conversation, at one time, over here, where George Engle keeps his brick, with one Fred Shaw, about this mare, Fleet?

"A. I did.

"Q. Did you tell him, in that conversation, that you had paid Mr. Hoppin part of the mortgage?

"*A.* No, sir. I told him it was a fraud from beginning to end.

"*Q.* And you didn't tell him you had paid part of it?

"*A.* No; I did not."

Witness further testified that the horses taken on the writ were worth $600, and that one horse named "Poughkeepsie Chief," and described in the Hoppin mortgage, and purporting to be incumbered thereby, had at his request been released from said mortgage by A. D. Hoppin some time before those in suit were taken by the plaintiff.

Mrs. Van Kirk was called as a witness for defendant, and gave evidence tending to show that the Hoppin mortgage was given at the instance and suggestion of Samuel D. Hoppin.

The defendant here rested his case, and plaintiff called Fred Shaw, who gave testimony, on his direct examination, tending to show that he had a talk with the defendant, in which the defendant stated he had paid some on the Hoppin mortgage. On his cross-examination the witness testified that in that conversation the defendant said that Hoppin was trying to beat him out of the horse, Fleet, which witness was then driving.

"*Q.* What else did he say?

"*A.* He said he gave him a sham mortgage.

"*Q.* What else did he say? What else do you remember?

"Counsel for plaintiff objected to what defendant, Sherman, further said.

"*By the Court.* It may be asked, to test this witness' recollection. It should not be regarded as evidence of the fact.

"Defendant's counsel then claimed the right to the whole conversation.

"*By the Court.* Certainly. I have just ruled that. But I say to the jury, in connection with that, that they should not take that as any evidence that he did give a sham mortgage. You are entitled to the conversa-

tion, and that only to test his recollection as to just what was said."

To this ruling, counsel for defendant excepted, and sets this out as his first assignment of error. Defendant's counsel then asked the witness what else was said, and the witness replied that the defendant then stated he got some money on the mortgage, but did not say how much.

Plaintiff also gave evidence tending to show that defendant did pay the $100 on the Hoppin mortgage. Mr. A. D. Hoppin, the mortgagee in the mortgage, was called, and testified that he lived 16 or 18 miles from Paw Paw, where defendant resided, and, through his father, Samuel D. Hoppin, loaned the defendant $500, taking the note and mortgage in controversy here as security; that in April, 1886, defendant paid him $100 thereon; that he had talked with defendant, who admitted his liability for the unpaid balance. Mr. Samuel D. Hoppin also gave evidence of the several sources from which his son derived the $500 which witness paid over to defendant at the time of taking the mortgage. These statements were all denied by the defendant. In substance, the claims of the parties are as above set forth.

It is contended by defendant's counsel that the court was in error in limiting the effect of the cross-examination of the witness Shaw, and in stating to the jury that it could only be received to test the recollection of the witness as to what was said, and not as proof of the fact that the Hoppin mortgage was a sham. In this the court was not in error. The defendant's statement to a third party could not be introduced as having any tendency to prove the truth of such statement. The question is not open to the claim that where one party has drawn out a part of a conversation the other party may ask for the whole of it. Here the court permitted the

answer to the question, and counsel had the privilege, under the ruling of the court, to get the whole of the conversation between Shaw and defendant; but defendant had no right to introduce his statements made to Shaw, even by the cross-examination of Shaw, for the purpose of proving the truth of the statements so made. The court very properly told the jury that it could not be received for such purpose. Any other rule would permit a party, by his own unsworn statement, to make his case. It is the rule that, where a party makes a statement out of court against his interest, the opposite party may make proof of the fact in court; but it is too well settled to need the citation of authorities that a party cannot make statements out of court in his own interest, and then come into court, and, even upon cross-examination of his antagonist's witnesses, prove the fact of statements being made, and claim for it the weight of direct proof of the truth of the statement. The authorities cited by counsel for defendant do not sustain the claim he makes as to the admissibility of this evidence for any such purpose.

All the other assignments of error relate to the charge. The second assignment of error takes up that portion of the charge in which the court says:

"If the facts are as indicated, then the plaintiff was entitled to the possession of the horses."

It is claimed that this portion of the charge was an instruction to the jury that certain of the testimony tended to prove certain facts, and that these facts were indicated by such proofs. This portion of the charge, standing alone, might possibly be open to this criticism; but this must be construed with the other portions of the charge preceding it. The court had already stated the plaintiff's claim, which was, in substance, similar to

that made on the former trial, and which then stood uncontradicted. After stating these facts, the court continued:

"The Supreme Court of this State has decided in this very case that, if the facts are as indicated, then the plaintiff was entitled to the possession of the horses; that defendant could not consent to plaintiff taking the horses, and then take them from his possession, without at least tendering him his fees and expenses. So that, if you find the facts to be as testified by Mr. Eldredge, you will not inquire further, as in that case the plaintiff would be entitled to the possession of the horses, no matter whether the Hoppin mortgage was of any validity or not; and, as indicated, you should not, in such case, enter into an inquiry in regard to the Hoppin mortgage, or the payment of the Sellick mortgage, but would at once return a verdict for the plaintiff, assessing his damages at the sum of five cents. If you do not find the facts to be as testified by the plaintiff, then you may enter into, and inquire in regard to, the existence and validity of the Sellick and Hoppin mortgages."

There was no error in this portion of the charge. It was consistent and in line with the ruling of this Court on the former hearing. It was there said, under the facts recited by the Court:

"The right of possession was in Eldredge, not only by the authority from Hoppin, but by the voluntary surrender of the property by the defendant, the mortgagor; and the defendant had no right, after such voluntary surrender of the mortgaged property, and after the plaintiff had been put to the expense of keeping, to take the property away without first paying, or tendering payment, of the mortgage debt, and interest, and such expenses, and it is very doubtful, under the circumstances here stated, if Hoppin himself would have had the right to have the possession of the property without first paying the expenses incurred in keeping the property, and the costs and charges of Eldredge." 70 Mich. 270.

Counsel does not contend here that this rule was not properly laid down, under the circumstances then appear-

ing in the former record. But the plaintiff's claim is now, in all respects, as then made; and the court so stated it to the jury, but told the jury, if this was not shown, then they could inquire into the validity of the two mortgages. This was in view of the testimony of defendant that he never assented to the plaintiff taking the property in the first instance.

The court further instructed the jury, in reference to these two mortgages:

"There is no proof tending to impeach the validity of the Sellick mortgage at the time the plaintiff took possession of two of the horses described in the writ. The defendant claims that, before he took the horses away, he had paid the amount due on the Sellick mortgage to Mr. Breck. The burden of maintaining this defense rests on the defendant, and he is bound to establish it, in all its elements, by a preponderance of the evidence in the case. In order to show that the Sellick mortgage was paid, he must have proven to you, first, that he paid, not only the full amount due on the mortgage, but also all expenses incurred by the plaintiff in keeping the two horses described in that mortgage, and his fees for advertising them. And this would be true whether the defendant consented to the plaintiff taking the horses or not, even if the plaintiff took the horses without the consent, and against the will, of the defendant. The defendant would have no right to take the two horses described in the Sellick mortgage without tendering the full sum due on the mortgage, and all expenses of its foreclosure.

"In order to show you that the Sellick mortgage was paid, defendant must, in the second place, have proven to you, by a fair preponderance of the evidence in the case, that he paid the money to some one who was duly authorized to receive it. If he paid the money to Mr. Breck, this would not discharge the mortgage, unless there is sufficient evidence that Mr. Breck had authority to receive both the amount due on the mortgage and the expenses of foreclosure, and that he did receive both the sum due and the expenses. The defendant must also show that Mr. Breck did receive the money, either by himself, or by some one so connected with him that the

payment to the other was equivalent to the payment to him. If Harley Breck was his clerk in the office, and had either general authority to receive money for him, or particular authority to receive this money, then Harley Breck would have the same authority to receive the money that George E. Breck had,—neither more nor less; but you can only find Harley Breck's authority from the evidence in the case, and not from mere conjecture, and the fact that Harley Breck gave a receipt for the money is no evidence, of itself, that he had any authority to receive it. The defendant might have discharged the Sellick mortgage by tendering the amount due, with fees and expenses, to either the plaintiff, Mr. Eldredge, or to Albert Hoppin. He could pay it to any one else only at the risk of the payment availing him nothing if the person to whom the money was paid had no authority to receive it.

"If you find that the Sellick mortgage has been fully paid, with all costs, fees, and expenses, to any one authorized to receive the money, then such payment operated as a discharge of the Sellick mortgage. But, if the defendant has failed to establish every one of the elements by a fair preponderance of the evidence on that subject, then the defense, so far as the Sellick mortgage is concerned, fails; and your verdict should, in any event, be for the plaintiff, for the two horses described in the Sellick mortgage.

"Bearing in mind, gentlemen, what has heretofore been said to you,—that, if you find that the facts were as stated by the the plaintiff, Mr. Eldredge, you should not consider any question relating to the validity of the Hoppin mortgage, but at once find for the plaintiff,—it now becomes my duty to instruct you in regard to the Hoppin mortgage. In case you should find that the horses were taken by the plaintiff, under the Hoppin mortgage, against the will of defendant, in that case you may consider whether the Hoppin mortgage was given for a good consideration, or without any consideration. On this point, also, the burden of proof is on the defendant to show that the mortgage was given without any consideration; and, unless the defendant has proven this fact to you by a fair preponderance of the evidence in the case, then you should find for the plaintiff. In other words, when a man affixes his name to a note and mortgage such as are put in evidence in this case, the law

presumes that he received a good and sufficient consideration for his so doing, and that his promise is binding; and, to overcome this presumption, the defendant must show the contrary by a fair preponderance of the evidence in the case, else his defense fails.

"If you find it proven, by a fair preponderance of the evidence in the case, that, when the Hoppin mortgage was given, no money was received by the defendant as a genuine consideration for the mortgage, but only as assumed consideration, and that the mortgage was given by defendant owing to the importunity of Mr. Samuel Hoppin, and because defendant's fears were worked upon by Mr. Hoppin, by representing to defendant that his property was in danger from his creditors, and that such representations were untrue, and that the defendant never paid anything on such mortgage, then the Hoppin mortgage was invalid and worthless as between the defendant and Albert Hoppin. But, on the contrary, if you find that, when the Hoppin mortgage was given, the defendant received $500 of Samuel Hoppin, then the mortgage was a good and valid one, and the plaintiff is entitled to your verdict, in any event, no matter what you may find in regard to the taking of the horses, or in regard to the Sellick mortgage.

"In deciding the question of the validity of the Hoppin mortgage, if you find it necessary to decide that question, then you should take into consideration all the facts and circumstances, near and remote, bearing upon this question, and decide the question according to the weight of the evidence in the case,—bearing in mind that the burden rests upon the defendant of disproving the validity of the mortgage; that, unless the defendant's testimony upon that point is of greater weight than that introduced by the plaintiff, then the plaintiff is entitled to your verdict."

Certain parts of this portion of the charge counsel selects, and bases upon such selected portions his remaining assignments of error, except the last. Taking this portion of the charge together, under the testimony given in the case, it very fairly submitted the issues raised. The fact that defendant gave the Hoppin mortgage to defraud creditors could not aid the defendant in recover-

ing back the property, except as it was coupled with the claim now made by him,—that he was induced thereto by the false statements of Samuel D. Hoppin, the agent of the mortgagee. Courts will not aid parties in taking advantage of their own wrongs, but will rather leave them where, by their wrongful and fraudulent conduct, they have placed themselves. But the defendant claims to have been induced to make the Hoppin mortgage by the false representations of the elder Hoppin, and was overpersuaded by him to do so. This was fairly put to the jury.

We find no error in that portion of the charge relative to the Sellick mortgage.

The last assignment of error is that the court was in error in submitting the case to the jury without stating to them what facts would warrant a verdict for the defendant. There is no force in this objection. The court stated the whole facts very plainly to them that arose under the testimony offered.

In view of the former opinion in this case, and the testimony now offered, it is very difficult to find any theory upon which the defendant could prevail. There is no testimony in the case showing that he ever tendered plaintiff the costs and expenses of this attempted foreclosure of the mortgages. The only way that this is attempted to be met is that he did not turn the horses over to the plaintiff voluntarily. If the Hoppin mortgage was valid, the plaintiff had a right to hold the horses. If the Sellick mortgage was not satisfied by the tender, he had a right to hold two of them.

These questions were fairly submitted, and the judgment must be affirmed, with costs.

The other Justices concurred.